UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WELLS FARGO BANK, N.A.,<br><br>    Plaintiff<br><br>v.<br><br>FIDELITY NATIONAL TITLE GROUP, INC., et al.,<br><br>    Defendants | Case No.: 2:20-cv-02156-APG-NJK<br><br>**Order Granting Motion to Remand and Denying Motion for Attorneys' Fees**<br><br>[ECF Nos. 11, 12] |

Defendant Fidelity National Title Insurance Company (FNTIC) removed this case to this court before any defendant was served with process. Plaintiff Wells Fargo Bank moves to remand the case to state court, claiming that removal is barred by the forum defendant rule of 28 U.S.C. § 1441(b)(2). The issue presented is whether a non-forum defendant may remove a case before any defendant was served when one of the defendants is a citizen of the forum state. Because removal of this case was premature, I grant the motion and remand the case. I deny Wells Fargo's motion for attorneys' fees.

**PROCEDURAL POSTURE**

Wells Fargo filed this action in state court on November 23, 2020. Wells Fargo sued Fidelity National Title Group, Inc., FNTIC, Land Title of Nevada, Inc. (Land Title), and various Doe Defendants. Land Title is the only defendant that is a Nevada entity. ECF No. 1 at 2.

The day after the complaint was filed, FNTIC removed the case to this court. None of the defendants had been served when the case was removed. This tactic of removing a diversity case before a forum defendant has been served is termed a "snap removal." The goal is to avoid the bar against removal that exists when any defendant "properly joined and served" is a forum

defendant. 28 U.S.C. § 1441(b)(2). Wells Fargo now moves to remand, arguing that removal was improper because Land Title is a forum defendant and FNTIC's snap removal violated § 1441(b)(2). FNTIC responds that Land Title is a sham defendant that must be ignored for diversity purposes, and the fact it had not been served does not preclude removal.

**ANALYSIS**

"Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773–74 (9th Cir. 2017) (internal quotations and citation omitted). This burden on a removing defendant is especially heavy because "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Id.* (citations omitted); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

    **A. Land Title is not a sham defendant.**

The forum defendant rule bars removal based on diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Land Title is a forum defendant. FNTIC argues I should ignore Land Title for removal purposes because it is a sham defendant named solely to invoke the forum defendant rule. FNTIC first contends that Land Title is a dissolved entity that cannot be sued. Even if Land Title could be sued, FNTIC also argues, the sole basis for this suit is Wells Fargo's attempt to recover under a title insurance policy issued by FNTIC. Land Title is an agent, not an insurer, and thus has no contractual or legal obligation to indemnify Wells Fargo

under that policy. Wells Fargo responds that it is asserting claims and allegations against Land Title that go beyond the policy.

"[U]nder the fraudulent-joinder doctrine, joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (internal quotation marks and alterations omitted). "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

### 1. The statute of limitations

FNTIC first argues that Land Title dissolved in 2010 and Wells Fargo's claims against it are barred by the statute of limitations. Wells Fargo responds that FNTIC erroneously relies on the wrong version of the relevant statute.

At the time Land Title dissolved, Nevada Revised Statutes (NRS) § 78.585 provided that "[t]he dissolution of a corporation does not impair any remedy or cause of action available to or against it or its directors, officers or shareholders arising before its dissolution and commenced within 2 years after the date of the dissolution." In *Beazer Homes Nevada, Inc. v. Eighth Judicial District Court ex rel. County of Clark*, the Supreme Court of Nevada determined that § 78.585 did not address the limitation period for post-dissolution claims, so those claims are governed by "the statutes of repose or limitation applicable to the post-dissolution cause of action." 97 P.3d 1132, 1136-38 (Nev. 2004). The court also concluded that "the phrase 'arising before its dissolution' in NRS § 78.585 was intended to be interpreted consistently with its use in the statute-of-limitations context and that therefore a claim does not arise until a litigant

3

discovers, or reasonably should have discovered, the facts upon which a claim is based." *Id.* at 1139.  So here, if the 2010 version applies, Wells Fargo's claims might be timely and Land Title would not be a fraudulent defendant. *See* NRS § 11.090(2)(d) (providing a four-year limitation period for NDTPA claims and stating that the "cause of action shall be deemed to accrue when the aggrieved party discovers, or by the exercise of due diligence should have discovered, the facts constituting the deceptive trade practice").

In 2013, the Nevada Legislature amended § 78.585 so it now reads as follows:

> 1. The dissolution of a corporation does not impair any remedy or cause of action available to or against it or its directors, officers or stockholders commenced within 2 years after the date of the dissolution with respect to any remedy or cause of action in which the plaintiff learns, or in the exercise of reasonable diligence should have learned of, the underlying facts on or before the date of dissolution, or within 3 years after the date of dissolution with respect to any other remedy or cause of action.  Any such remedy or cause of action not commenced within the applicable period is barred. . . .
> 2. Nothing in this section shall be so construed as to lengthen any shorter statute of limitations otherwise applicable provided that no provision of this chapter or other specific statute has the effect of applying any statute of limitations that is longer than provided for in this section with respect to any such remedy or cause of action.  . . . .

If the 2013 version applies, Wells Fargo's claim would be untimely because it did not assert a pre-dissolution claim within two years of dissolution or a post-dissolution claim within three years of dissolution.

Wells Fargo argues that the 2013 version cannot be applied retroactively to cut off its post-dissolution claims that would have been timely under the 2010 version.  Under Nevada law, "a statute will not be applied retroactively unless [(1)] the Legislature clearly manifests an intent to apply the statute retroactively, or [(2)] it clearly, strongly, and imperatively appears from the act itself that the Legislature's intent cannot be implemented in any other fashion." *Sandpointe Apts. v. Eighth Jud. Dist. Ct.*, 313 P.3d

4

849, 857-58 (Nev. 2013) (en banc) (quotation omitted).  Nothing in the 2013 version indicates the Legislature intended retroactive application of the new time period to assert post-dissolution claims.  Thus, it is possible that Wells Fargo's claims are timely and Land Title is not fraudulently joined. *See Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (stating that joinder is not fraudulent "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants"(internal quotations omitted).  Delving any deeper into an analysis of whether Wells Fargo's claims are in fact timely is a matter for the state court to resolve on remand.  It suffices for my purposes that it is not "obvious according to the settled rules of the state" that Wells Fargo has failed to timely state a claim against Land Title. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quotation omitted).

### 2. Wells Fargo's claims against Land Title

Wells Fargo's complaint asserts potentially valid claims against Land Title.  It alleges that Wells Fargo's predecessor entered into a contract with Land Title to obtain a title policy, and that Land Title represented that the policy would cover losses ultimately caused by the lien that gave rise to this dispute. ECF No. 1-1 ¶¶ 71-73, 126, 152; *see also id.* at ¶ 73 ("Land Title agreed to undertaking the obligation of procuring, issuing, and/or providing coverage that insured the Lender's Deed of Trust was in superior position over the HOA's lien."); *id.* ¶ 164 (Land Title "issued the Policy with the belief that it would provide coverage if the Deed of Trust was impaired or extinguished by the enforcement of the HOA's lien."); *id.* ¶¶ 179, 189 (additional alleged misrepresentations by Land Title).  Among other claims, Wells Fargo brings a deceptive

trade practices claim against Land Title for "knowingly misrepresenting" the coverage its predecessor negotiated for. *Id.* ¶¶ 172-181.[1]

While these claims and allegations may not be pleaded as clearly as possible, FNTIC has not shown by clear and convincing evidence that they obviously fail to assert claims against Land Title under Nevada law.[2] FNTIC focuses on the obligations under the title policy, but it ignores Wells Fargo's non-contractual claims and allegations regarding Land Title's alleged misrepresentations and violations of Nevada's deceptive trade practices statutes. Land Title is therefore not a sham defendant. Because it is a forum defendant, 28 U.S.C. § 1441(b)(2) applies.

**B. FNTIC's snap removal was improper under 28 U.S.C. § 1441(b)(2).**

FNTIC also argues that even if Land Title is a legitimate defendant, it had not been served at the time of removal. Thus, FNTIC contends that § 1441(b)(2) is not a bar to removal because Land Title had not been "properly joined and served" as required under the statute. Wells Fargo responds that snap removals like this violate the purpose of § 1441(b)(2), which is to preserve a plaintiff's choice of a state court forum by suing a proper forum defendant. The question is thus whether a non-forum defendant is permitted to remove a diversity case before any defendants have been served.

The plain language of § 1441(b)(2) does not answer the question, as evidenced by the number of courts reaching different conclusions on whether snap removal is permitted under the

---

[1] Wells Fargo also alleges that Land Title is liable as the alter ego of the insurer under the Policy. Because Wells Fargo alleges other viable claims against Land Title, I need not address whether the alter ego allegation is viable under Nevada law.

[2] To the extent FNTIC argues that Wells Fargo's claims against Land Title are barred by the statute of limitations or other defenses, those arguments are properly raised in the Nevada state court. At this point, it is not clear that those defenses would obviously be successful.

statute. *See Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 317-18 (D. Mass. 2013) (collecting cases). "The question has deeply divided district courts across the country." *Id*. at 315.

In *Gentile*, Judge Woodlock held that § 1441(b)(2)'s plain language prohibits snap removal because it assumes that at least one defendant has been served before removal. *Id.* Judge Woodlock was interpreting the prior version of § 1441(b)(2), which was applicable to the facts of that case. *Id.* That version stated that an action founded on diversity of citizenship "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[3] In the phrase "none of the parties in interest properly joined and served," the word "none" functions as a pronoun and means "not any." *Id.* at 318.

> "Any," in turn, means "one or more indiscriminately from all those of a kind." . . . Inherent in the definition is some number of the "kind" from which the "one or more" can be drawn. Accordingly, the use of "none" and definite article "the" when referring to "parties" assumes that there is one or more party in interest that has been properly joined and served already at the time of removal, among which may or may not be a forum-state defendant. Thus, section 1441(b) conditioned removal on *some* defendant having been served.

*Id*. (internal citation omitted). Judge Woodlock notes that the current version of the statute—"any of the parties" instead of "none of the parties"—has the same meaning. "[T]he statute assumes at least one party has been served; ignoring that assumption would render a court's analysis under the exception nonsensical and the statute's use of 'any' superfluous." *Id*. Thus, a "basic assumption embedded in the statute [is] that a party in interest had been served prior to removal . . . ." *Id.* This interpretation precludes snap removals.

---

[3] The statute was amended in 2011 to its present language. Judge Woodlock found that "the amendments did not materially change the relevant language of the statute." *Gentile*, 934 F. Supp. 2d at 316 n.2.

7

While this interpretation is not the only one possible, I agree it is the most cogent.[4] Reasonable jurists have interpreted this statute differently, and the fact that "[d]istrict courts are in disarray on the question"[5] confirms that the statute's language is ambiguous. I thus "look to 'canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent.'" *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1183 (9th Cir. 2019) (quoting *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006)).

To confirm the validity of his interpretation, Judge Woodlock examined the history of the removal doctrine and the "properly joined and served" language. *Gentile*, 934 F. Supp. 2d at 319-21. "The removal power, and by extension the forum defendant rule, is founded on the basic premise behind diversity jurisdiction itself, [which] was designed to protect non-forum litigants from possible state court bias in favor of forum-state litigants." *Id.* at 319. Forum defendants presumably do not need that protection from local bias, so § 1441(b)(2) protects the plaintiff's choice of a state court forum where a forum defendant is a proper party to the case. *Id.*

There is scant legislative history to help interpret the phrase "properly joined and served." *Id.* But it seems clear from relevant caselaw that the purpose "was to prevent plaintiffs from defeating removal through improper joinder of a forum defendant; incomplete service appears to have been included as a means of identifying and policing such abuse by proxy." *Id.* at 319-20. The goal was to thwart gamesmanship by plaintiffs who joined forum defendants with no intent of ever serving them.

Snap removal, on the other hand, allows gamesmanship by defendants who are sophisticated and have sufficient resources (or suspicion of impending litigation) to monitor

---

[4] My colleague Judge Mahan agrees. *See Carrington Mort. Servs., LLC v. Ticor Title of Nev., Inc.*, No. 20-cv-00699-JCM-NJK, 2020 WL 3892786 at *3 (D. Nev. July 10, 2020).

[5] 934 F. Supp. 2d at 316.

8

court filings and immediately remove a case before a forum defendant can be served. This practice has become more prevalent with the advent of modern technology that allows near-real-time monitoring of dockets across the country. Congress would not have wanted to stop gamesmanship by plaintiffs by allowing gamesmanship by defendants.

The purposes underlying § 1441(b)(2) are better served by disallowing removal before any defendant is served. The plaintiff can preserve its ability to remain in state court by serving the forum defendant first and without delay. The non-forum defendant may still argue that the forum defendant is a sham who should be disregarded for purposes of removal. *See Gentile*, 934 F. Supp. 2d at 322-23. And this interpretation is consistent with § 1441(b)(2)'s plain language. *Id.* at 323.

Here, FNTIC's removal was premature because no defendant had been served. As a result, I must remand the case to state court. I deny Wells Fargo's motion for attorneys' fees because, while removal was improper, it was not frivolous or objectively unreasonable. *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006).

**CONCLUSION**

I THEREFORE ORDER that Wells Fargo's motion to remand **(ECF No. 11) is granted** and its motion for attorneys' fees **(ECF No. 12) is denied**. This case is remanded to the state court from which it was removed for all further proceedings. The Clerk of the Court is instructed to close this case.

DATED this 20th day of July, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE